Filed 2/11/25  In re L.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re L.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. D.P., Defendant and Appellant. | E084841 (Super. Ct. Nos. J288906, J288907, J288908) OPINION |
| In re L.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.G. et al., Defendants and Appellants. | E084487 (Super. Ct. Nos. J288906, J288907, J288908) |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin, Judge. Affirmed.

Marisa L.D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant, D.P.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant, L.G.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

I.

INTRODUCTION

D.P. (Mother) and L.G.J. (Father) appeal the juvenile court's order denying their petitions under section 388 of the Welfare and Institutions Code (Case No. E084487).[1] In a separate case, D.P. appeals the court's order terminating her parental rights under section 366.26 (Case No. E084841). We find no error and affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

D.P. is the mother of minors I.P., D.G., and L.G. Father is the presumed father of twin boys, D.G. and L.G. D.J.is the alleged father of their sister, I.P. D.J. is not a party in either appeal.

---

[1] All further statutory references are to the Welfare and Institutions Code.

The children came to the attention of plaintiff and respondent, San Bernardino County Child and Family Services (CFS) in April 2021, when CFS received a referral alleging Mother engaged in domestic violence with her live-in boyfriend and the minor maternal aunt in the children's presence. When investigating the referral, D.G. reported that Mother gives him a "'whooping' with a belt" on his buttocks as discipline. L.G., however, denied any physical abuse or corporal punishment.

Shortly after receiving and investigating the referral, CFS filed a petition on the children's behalf under section 300. The petition alleged the children were at a substantial risk of harm if left in Mother's care because (1) she exposed the children to domestic violence, (2) she could not provide care for them due to her untreated mental health issues, (3) she left the children without care and support while incarcerated, and (4) she used inappropriate and excessive physical discipline. The petition also alleged Father could not provide care for his children (L.G. and D.G.) because he was incarcerated at the time. After a detention hearing, the juvenile court ordered the children (L.G., D.G., & I.P.) removed from Mother's care and placed in foster care.

The court held a combined jurisdiction/disposition hearing in September 2021. The court found three of the petition's jurisdictional allegations true and sustained them as to all three children: (1) Mother exposed the children to domestic violence (b-1), (2) Father could not provide for the children due to his incarceration (g-4), and (3) Mother used inappropriate and excessive physical discipline. The court ordered the children removed from Mother's custody and ordered reunification services for her with weekly

3

supervised visits, while services were bypassed for both fathers due to their incarceration (§ 361.5, subds. (b)(12), (e)(1)).

By July 2022, Mother had completed all of her court-ordered reunification services and had consistently visited the children (including about three months of unsupervised visits). Based on Mother's progress and performance, CFS recommended the children be returned to her care and custody without objection from the children's counsel. The juvenile court therefore ordered the children immediately returned to her care and custody.

Toward the end of 2022, CFS expected to close the case because there were no longer any concerns. However, CFS noted there were new concerns in advance of a review hearing in January 2023. These concerns included: (1) suspicion that Mother and Father, who had recently been released from prison, were living together without approval and in violation of the court's orders, (2) Mother threatened the children with corporal punishment, and (3) Mother moved without telling CFS of her whereabouts. After investigating these concerns, however, CFS recommended the juvenile court dismiss the petition.

But, around the same time, the children's counsel petitioned under section 388 to change the court's orders and remove the children from Mother's care and custody. According to counsel, Mother failed to follow the court's orders to grant counsel and his social worker access to the children and their home. After investigating counsel's concerns, CFS recommended the court grant counsel's petition. CFS reported that

4

Mother refused to give the children's counsel's social worker access to the children, the children had not been going to school, and Mother refused to disclose their whereabouts. Mother also was pregnant and would not disclose who the father was. Mother gave birth to a baby girl in May 2023, though she repeatedly told CFS she had miscarried the child.

Due to these concerning developments, CFS filed a section 387 petition about three months later, in June 2023, recommending removal of the children. The petition alleged Mother violated the court's orders by (1) failing to notify CFS of a change in the children's residence, (2) failing to give counsel for the children access to the children, and (3) allowing Father to have unauthorized access to the children by living with the children and Mother in the maternal aunt's home. CFS supported the petition in part with an executed warrant directing the children's removal. At a detention hearing on the petition, CFS reported that it had received a hotline referral alleging that Mother was homeless, pregnant, and traveling with Father. CFS investigated the referral by going to the hotel where Mother and Father allegedly were staying with the children, but none of them could be located. The court ordered the children detained and removed from Mother's care and custody.

In September 2023, the court held a contested jurisdiction/disposition hearing on CFS's section 387 petition. Before the hearing, CFS submitted a report outlining how Mother failed or refused to complete the tasks necessary to close the case. CFS explained that Mother was elusive about where she and the children were living and whether Father had unauthorized contact with the children, she consistently concealed her pregnancy,

5

and she had generally not been forthcoming with CFS. In other words, Mother's violation of court orders and poor communication with CFS made it difficult for CFS to assess the risk she posed to the children.

CFS, along with the children's counsel, therefore recommended that the children be removed from Mother's care and custody. The juvenile court agreed with the recommendation and ordered the children removed. In doing so, the court granted CFS's section 387 petition and the children's counsel's section 388 petition.

In November 2023, D.G. and L.G. were placed with non-relative Ms. G., while I.P. was placed with relative Ms. S. In the ensuing months, CFS had sporadic contact with Mother and Father. Although the parents appeared to want to reunify with their children, CFS ultimately recommended in February 2024 that the juvenile court set a section 366.26 hearing to schedule a permanent plan of adoption for the children. The court granted the request and set the hearing while reducing the parents' visits to once per month.

In July 2024, however, Mother and Father filed section 388 petitions seeking a change in the court's orders. Mother sought return of the children with family maintenance services or, alternatively, for family reunification services only. Mother also asked the court to consider legal guardianship of the children instead of adoption. Father, on the other hand, asked only for family reunification services with one weekly visit. The juvenile court summarily denied both petitions without holding an evidentiary hearing. The parents timely appealed that order.

In September 2024, the juvenile court held the section 366.26 hearing. The court received stipulated written testimony from L.G. and I.P., and heard testimony from the parents, who argued that the beneficial parental relationship exception applied (see § 366.26, subd. (c)(1)(B)(i)). The court disagreed with the parents, found that adoption was appropriate, terminated the parents' parental rights, and freed the children for adoption by their respective caregivers. Only Mother timely appealed.

III.

DISCUSSION

Both parents argue the juvenile court erroneously summarily denied their respective section 388 petitions without holding an evidentiary hearing. Mother alone challenges the juvenile court's orders terminating parental rights. We find no error.

A. *Section 388 Petitions*

Section 388 authorizes a parent of a dependent child to petition for a hearing to change, modify, or set aside any previous court order. (§ 388, subd. (a)(1).) The juvenile court shall order a hearing where "it appears that the best interests of the child . . . may be promoted" by the new order. (§ 388, subd. (d).) "Thus, the parent must sufficiently allege" a prima facie showing of "both a change in circumstances or new evidence and the promotion of the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157, italics omitted; § 388, subd. (d); Cal. Rules of Court, rule 5.570(h).)

"To make a prima facie showing under section 388" that would warrant holding an evidentiary hearing, "the allegations of the petition must be specific regarding the

7

evidence to be presented and must not be conclusory." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) "'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citation.] 'Whether [the petitioner] made a prima facie showing entitling [the petitioner] to a hearing depends on the facts alleged in [the] petition, as well as the facts established as without dispute by the [dependency] court's own file . . . .' [Citation.]" (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.) Thus, when deciding whether the parent has made a prima facie showing, "the court may consider the entire factual and procedural history of the case." (*In re K.L.* (2016) 248 Cal.App.4th 52, 62.)

We review the juvenile court's decision to deny a section 388 petition without an evidentiary hearing for an abuse of discretion. (*In re K.L.*, *supra*, 248 Cal.App.4th at p. 62.) The juvenile court's decision will not be disturbed unless the court ""'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

We first reject the parents' argument that the juvenile court applied the wrong standard when evaluating their section 388 petitions. When stating its oral ruling, the trial court outlined the evidence it properly relied on, then concluding by stating the court was denying the petitions because "[t]here has not been a change of circumstances" and granting the petitions "would not be in the best interests of the children." The court therefore declined to hold a hearing on the petitions.

8

That denial was not an abuse of discretion because the parents failed to make a prima facie showing of changed circumstances. (See *In re Alayah J.*, *supra*, 9 Cal.App.5th at p. 478.) "'Not every change in circumstance can justify modification of a prior order.' [Citation.] The change in circumstances supporting a section 388 petition must be material." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120-121.) The change of circumstances "'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.' [Citation.]" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)

Mother contends her circumstances had changed because she had completed reunification services. Despite her laudable efforts, problems persisted. The children were returned to Mother's care in July 2022, about 15 months after their removal, because of Mother's participation in services and her overall performance. But in March 2023, the children's counsel petitioned to have the children removed from Mother's care after she consistently refused to grant counsel and his social worker access to the children and their home, thereby violating the juvenile court's orders. Counsel also alleged Mother allowed unauthorized contact between the children and Father and she was concealing that she was pregnant. In support of counsel's petition, CFS reported that they could not get a hold of Mother in April 2023 to investigate her living situation and, as a result, CFS could not determine the children's whereabouts or whether they were living with Father—in violation of the court's orders.

In September 2023, CFS reported that Mother appeared unwilling to complete the tasks necessary to close her care. CFS also reported that Mother continued to be elusive and untruthful, particularly in regards to her pregnancy, where she and the children were living, and whether she had allowed Father to have unauthorized contact with the children. The juvenile court then found that Mother had violated the court's orders multiple times by not allowing the children's counsel and social worker to access the children while allowing unauthorized contact between the children and Father.

Despite this, issues persisted for months. In July 2024, shortly before Mother filed her section 388 petition, Mother still maintained she had miscarried and refused to provide any medical documentation, despite CFS confronting her with proof that she had applied for benefits for the child. She also continued to refuse to provide her address beyond confirming that she lived somewhere in Los Angeles County.

In short, Mother continued to be untruthful, evasive, and uncooperative with CFS up until she filed her section 388 petition. This conduct hindered CFS's ability to determine whether Mother was living with Father and to evaluate whether the children could be safely returned to her care. The juvenile court reasonably found that, although Mother had made progress, the changes in her circumstances were not so significant as to justify changing the court's orders.

The juvenile court reasonably found Father's circumstances had not sufficiently changed either. Although Father voluntarily participated in services after his release from prison, some of his behavior was concerning. In particular, Father was verbally

aggressive toward Ms. G. during a visit, screaming and cursing at her in front of the children. He also became "aggressive" when a visit could not be held outdoors. And, like Mother, Father violated the court's orders by having unauthorized contact with the children and being evasive with CFS. On this record, the juvenile court did not abuse its discretion by finding Father failed to make a prima facie showing of changed circumstances.

In any event, the juvenile court also properly found that neither parent made a prima facie showing that granting their section 388 petition was in the children's best interests. The parents were inconsistent with visits, sometimes being late to them or missing them altogether. When they missed a visit on one occasion, the boys said they never wanted to see their parents again. Sometimes D.G. had tantrums before visits. And when they did visit, I.P. was sometimes "extremely moody" afterward and her school performance was negatively impacted. Because the visits were seemingly harming the children, they were reduced to once per month in March 2024. After this reduction, the children's caregivers reported improvements in the children's behavior and moods. By this point, the children had bonded well to their caregivers, and they all expressed wanting to live with their respective caregivers, not their parents.

Given this evidence, the juvenile court did not abuse its discretion by finding the parents failed to make a prima facie showing that it was in the children's best interests to grant the parents' section 388 petitions. We therefore conclude the trial court did not err by denying the petitions without holding an evidentiary hearing.

11

B. *Terminating Parental Rights*

At a section 366.26 hearing, the juvenile court selects and implements a permanent plan for the dependent child. (*In re K.P.* (2012) 203 Cal.App.4th 614, 620.) The options include (1) adoption, which requires terminating parental rights, (2) guardianship, or (3) long-term foster care. (§ 366.26, subds. (c)(1), (4)(A); *In re J.C.* (2014) 226 Cal.App.4th 503, 528.) If the court finds the child is adoptable, it "'shall terminate parental rights'" and select adoption as the child's permanent plan, unless it finds that one or more exceptions to the statutory adoption preference applies. (*In re K.P.*, *supra*, at p. 620; see § 366.26, subd. (c)(1)(A)-(B).) These exceptions "permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) "[I]t is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350, disapproved on another ground by *In re Caden C.* (2021) 11Cal.5th 614, 636, fn. 5.)

Mother argues the beneficial parental relationship exception to adoption applies. This exception applies when "'[t]he court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' (§ 366.26, subd. (c)(1)(B)(i).)" (*In re Caden C.*, *supra*, 11 Cal.5th at p. 631.) For the exception to apply, the parent must prove three elements: "(1) regular *visitation and contact*, and (2) *a*

*relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Ibid.*)

Our review of the juvenile court's ruling on whether the beneficial parental exception applies incorporates both the substantial evidence and abuse of discretion standards. (*In re Caden C.*, *supra*, 11 Cal.5th at pp. 639-641.) We apply the substantial evidence standard of review to the first two prongs of the exception and the abuse of discretion standard to the third prong. (*Ibid.*)

Even if Mother satisfied the first two prongs, the juvenile court did not abuse its discretion in finding that she did not satisfy the third prong. "If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Mother emphasizes that a bonding study found that "termination of parental rights *would* be detrimental" to the children. But the study found only that terminating parental rights "*could* be detrimental" to them. And although that study and other evidence shows that Mother had some positive visits and interactions with the children, there was ample evidence in the record that allowed the juvenile court to reasonably find that the children would not be "greatly harmed" by terminating Mother's parental rights. We disagree.

To begin, all three children expressed their desire to remain living with their caretakers. L.G. referred to Ms. G. as his "mom" or "mommy" and "my parent," and he

13

stated that he wanted to live with her "forever."  He did not want to return to the parents' care because they "whooped us and lied to us."  L.G. said he would feel "good" if he never saw Mother again, although he said he would still like to see her "sometimes." D.G., who lived Ms. G. as well, said he wanted to be adopted by her.  I.P. said she would be "sad" if she never saw her mom again, but would feel "pretty good" if she could stay living with her caregiver, Ms. S., while still having visits with Mother.  In Ms. S.'s view, I.P. was "okay" with Ms. S. adopting her, which Ms. S. thought was in I.P.'s best interests.

Although the parents in general consistently visited the children, the visits were not entirely positive.  When they were reduced to once per month, I.P. appeared to be unaffected while the boys appeared less stressed overall, and D.G. said the visits were better because there was less fighting.  Relatedly, L.G. stated that he would be "mad" if he had to live with his parents because they were "always cussing" and he "prays he never has to hear it again."

Given this evidence and the fact that the children have been thriving in their respective caregivers' care, the juvenile court reasonably found that the parents did not satisfy the third prong of the beneficial parental relationship exception.  That finding therefore was not "'"arbitrary, capricious, or patently absurd."'"  (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.)  We therefore affirm the trial court's order terminating parental rights.

14

IV.

DISPOSITION

The juvenile court's orders denying the parents' section 388 petitions and terminating parental rights are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORT

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

MILLER

J.